101 F.3d 1394
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Jason GRAY, Petitioner-Appellant,
v.
Larry MEACHUM, Commissioner, Respondent-Appellee.
 No. 96-2074.
 United States Court of Appeals,
Second Circuit.
 Aug. 23, 1996.
 
 David M. Reilly, Jr., New Haven, CT, for Appellant.
 Mitchell S. Brody, Asst. State's Atty., Office of the Chief State's Atty., Rocky Hill, CT, for Appellee.
 Present: NEWMAN, Chief Judge, and KEARSE and JACOBS, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 3
 Petitioner-appellant Jason Gray appeals from the December 18, 1995, judgment of the District Court denying his petition for a writ of habeas corpus to challenge his state court conviction for arson. Gray contends that the District Court erred in rejecting his claims (1) that there was insufficient evidence to support a finding that the fire was set intentionally, and (2) that the prosecution violated the Self-Incrimination Clause of the Fifth Amendment by introducing a prior statement by Gray who said, "They think I did it." Both of these claims are without merit.
 
 
 4
 1. Gray's principal contention is that the State failed to prove that the fire was set intentionally. Gray claims that the testimony of the fire marshal, Robert Westervelt, should be discounted because Westervelt failed to realize that a "classic pour pattern" could be created through incidental means by radiant heat, as well as by the ignition of a flammable accelerant. Gray notes that the presence of radiant heat in the upstairs room is entirely compatible with the circumstances surrounding the fire.
 
 
 5
 Gray's argument, however, goes to the weight of the evidence, and not its sufficiency. Gray does not contend that it was impermissible for Westervelt to testify as an expert witness. Thus, the jury was entitled to accept his testimony, which if credited, was sufficient to prove beyond a reasonable doubt that the fire was set intentionally. See Bossett v. Walker, 41 F.3d 825, 830 (2d Cir.1994) ("[T]he jury is exclusively responsible for determining a witness' credibility.") (internal quotations and citation omitted), cert. denied, 115 S.Ct. 1436 (1995).
 
 
 6
 Gray also contends that the spectrometric analysis indicating the presence of xylenes in the debris taken from the second floor should be disregarded since the xylenes could have been accidentally deposited in the debris under any number of explanations. Gray argues the xylenes could be accounted for by the fact that a cleaner containing xylene constituents was commonly used for spare engine parts stored on the second floor. Alternatively, he hypothesizes that the debris could have been contaminated while in the possession of the State. He points out that a can of Siloo taken by the fire marshal for testing purposes subsequently leaked and could have adulterated the debris sample.
 
 
 7
 These arguments again, however, while proper for the jury to consider at trial, are inappropriate for review on a petition for habeas corpus relief. The jury did not act unreasonably in concluding that the reason the xylenes were present in the debris was because someone had used Siloo as a flammable accelerant. Such a conclusion is just as reasonable, if not more so, than either of the hypotheses put forth by Gray. See Wright v. West, 505 U.S. 277, 296-97 (1992) ("[T]he prosecution need not affirmatively rule out every hypothesis except that of guilt.") (internal quotations and citation omitted).
 
 
 8
 Gray does not challenge the sufficiency of the evidence to identify him as the arsonist. This issue, presented to the District Court, was carefully considered by the District Judge, and we see no basis to disturb his ruling.
 
 
 9
 2. Gray also contends that the State's introduction of his statement to McKeon--"They think I did it."--constituted a violation of the Fifth Amendment. Gray argues that this statement led to a presumption that he displayed consciousness of guilt, which could be rebutted only if he took the stand and waived his Fifth Amendment privilege against compelled self-incrimination.
 
 
 10
 Regardless of whether the jury could properly infer from his statement to McKeon that Gray had displayed consciousness of guilt, the introduction of that statement into evidence did not violate his Fifth Amendment rights. Gray does not contend that the statement was coerced at the time he made it. Although Gray might have subsequently felt self-generated pressure to testify in order to explain himself, such pressure does not constitute "compulsion" within the meaning of the Fifth Amendment. See Colorado v. Connelly, 479 U.S. 157, 170-71 (1986); see also Miranda v. Arizona, 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.").